IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DIMAS L. APODACA,**

      Plaintiff,

vs.                                                 Civ. No. 07-1039 BB/ACT

**JOHN DANTIS, THADDEUS LUCERO, and
RONALD TORRES,**

      Defendants.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment filed August 28, 2008 (Docket No. 30), Defendants' *Martinez* report filed August 28, 2008 (Docket No. 29) and Defendants' Supplemental *Martinez* report filed October 13, 2008 (Docket No. 39). On December 12, 2008, Plaintiff filed a response to Defendant's *Martinez* report [Doc. 47] and on January 8, 2009, Plaintiff filed a response to Defendant's supplemental *Martinez* report [Doc. 48]. Having reviewed the pleadings and relevant law, and being otherwise fully advised, the Court recommends that Plaintiff's claims be dismissed with prejudice.

**PROPOSED FINDINGS**

Factual and procedural background.

    1.      This is a *pro se*, *in forma pauperis*, civil rights action brought under 42 U.S.C. § 1983 by Dimas L. Apodaca ("Plaintiff"). On October 12, 2007, Plaintiff filed his Civil Rights Complaint

("Complaint") alleging constitutional violations during his incarceration at the Metropolitan Detention Center ("MDC"). Specifically, Plaintiff alleges: he was subjected to overcrowded conditions; food services were inferior and lacking in nutritional value; inmates were not being seen by medical personnel; law library access, legal resources and copying capacity were inadequate; mail is interfered with and indigent legal mail is often not sent; and canteen's prices were usury. Plaintiff further alleges that he submitted three grievances related to these issues.

2.      Plaintiff filed a "Motion to Amend Civil Rights Complaint 42 U.S.C. § 1983" ("Amended Complaint") on November 23, 2007. (Docket No. 70).  The Court granted the Motion on September 11, 2008.  (Docket No. 31.)  In his Amended Complaint Plaintiff alleges constitutional violations while he was incarcerated at the Bailey County Jail ("BCJ") in Muleshoe, Texas. Specifically, Plaintiff alleges that his transfer to the BCJ was illegal and conducted without his consent; that he was denied access to the law library, legal materials, writing utensils, copier access and notary services; that commissary charged usury prices and he was prevented from receiving money from family/friends for commissary purchases; that his three hours of outdoor recreation access weekly was unconstitutional; that laundering and/or exchange of his uniform once weekly is unsanitary and unhealthy; that his mail was returned to sender resulting in impeded communication with third parties, including his attorneys; that he was required for pay for any medical services rendered; that he was forced to strip search during transports; and he was deprived of a caseworker.

3.      Plaintiff was booked into MDC for parole violations twice during the relevant time period in this lawsuit for parole violations.  He was booked on July 17, 2007, for felony possession of a firearm, and again on August 15, 2007, for failure to register as a sex offender.  He was

convicted of criminal sexual contact with a minor on July 29, 1998, in the Second Judicial District Court.

4.      Due to overcrowding at MDC, Plaintiff was placed on a list for transfer to BCJ. Plaintiff was transferred on September 21, 2007. He was transported to and from the BCJ on four separate occasions to accommodate his court dates until February 22, 2008, when all MDC inmates were returned to the MDC after the MDC population decreased.

Legal Analysis.

5.      Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Only disputes over facts that might affect the outcome of the suit under the applicable law will preclude summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

6.      "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, conclusory allegations by the party opposing summary judgment are not sufficient to establish an issue of fact which would defeat the motion. *Id*. at 1109-10; *Setliff v. Memorial Hosp. of Sheridan County*, 850 F.2d 1384, 1392 (10th Cir. 1988).      7.      As mentioned in previous orders (Docket Nos. 24 and 33), a *Martinez* Report can be used for summary judgment purposes. In a summary judgment posture, the verified Complaint and the *Martinez* report are treated as affidavits. *Hall v. Bellmon*, 935 F.2d at 1111 (" A *Martinez* report is treated like an affidavit....The plaintiff's complaint may also be treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury.").

*Exhaustion of Remedies.*

8. The Prison Litigation Reform Act ["PLRA"] sets out express limitations prior to proceeding with a viable lawsuit. Under 42 U.S.C. §1997e(a) of the PLRA, a prison inmate is required to complete the prison administrative process before suing over prison conditions. *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is designed to be a disincentive for prisoners who would rather bypass available internal procedures and proceed directly to a lawsuit in federal court. The hope is that some prisoner litigation may be avoided, and that the suits which are brought have better documentation for the court to consider. *Woodford v. Ngo,* 548 U.S. 81 (2006).

9. Congress has eliminated both the discretion to dispense with administrative exhaustion and the condition that administrative exhaustion be plain, speedy, and effective. Even where the available remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available. *Id.* at 740. The PLRA's exhaustion requirement applies to all suits arising out of prison life. *Porter v. Nussle*, 534 U.S. 516, 525 (2002); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). "[T]he substantive meaning of § 1997e(a) is clear: resort to a prison grievance process must precede resort to a court." *Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204, 1207 (10th Cir. 2003) abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007). Accordingly, an inmate must do more than initiate the administrative grievance process; he must also complete it prior to filing suit. *Jernigan v. Stuchell*, 304 F.3d at 1032.

10. In a suit governed by the PRLA, the burden of proof of the exhaustion of administrative remedies issue is on the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). Defendant must prove that: (1) administrative remedies were available to the plaintiff,

and (2) the plaintiff failed to exhaust these remedies. *Purkey v. CCA*, 263 Fed. Appx. 723 (10th Cir. 2008).  As discussed below, all of Plaintiff's claims are subject to dismissal due to Plaintiff's failure to exhaust his administrative remedies.

        1.        Claims against MDC

11.        Defendants submitted a copy of their Policy and Procedures Manual entitled "1309 Policy Grievance Procedures. " *Martinez* report, Exh. I.  It states that "[t]here is a grievance procedure available to all inmates that include provisions for at least one level of appeal." *Id*. The procedure specifically states that:

> Grievance forms are available upon request from the Case Manager.  When an inmate feels a complaint has not been resolved informally or by request and wishes to pursue the matter further the inmate files a grievance form (MDC-5) with the Case Manger. Grievances will not be received by any other methods, which may circumvent operational procedures.

*Id.*

This policy was revised in late 2007 to reflect a change in MDC policy where by all grievances were to be filed with classification specialists, not case workers.  Olivia Webster, a classification specialist filed an affidavit describing the grievance procedure.

> Twice, weekly, I would visit a total of sixteen (16) pods....During each visit I speak with inmates to determine if they have any complaints or concerns.
> If the complaint is grievable, I provide the inmate with a grievance form, (in triplicate) an (sic) ask the inmate to document the grievance in writing.
> According to my notes, on February 26, 2008, Mr. Dimas Apodaca provided me with five grievance numbers, contending that he had filed these grievances and had not received a response....After a complete search, I advised Mr. Apodaca that there was no record of his filing any grievances and asked him to provide me with the pink copy of each of the grievances he advised he had previously filed.  Mr. Apodaca told me that he did not have copies of the grievances but said he had filled with case worker Mark Lopez.  I contacted Mr. Lopez, who verified that he did not receive any requests or written grievances from Mr. Apodaca.  I then asked Mr. Apodaca if he wished to file a grievance but he declined, indicating that he wanted copies of the grievances he claimed he had filed.
> A comprehensive review of the grievance records from 2006 through the present indicates that Mr. Apodaca had not filed a grievance while incarcerated at the MDC during this period.

*Martinez* report, Exh. Z.

  12. The evidence before the Court is that MDC had a grievance procedure and there is no record of Plaintiff ever filing a grievance at the MDC as required by the PLRA. Thus, Plaintiff's claims regarding his conditions of confinement at MDC must be dismissed.

    2. Claims against BCJ

  13. When the MDC inmates were booked at BCJ, each received an inmate handbook explaining the BCJ rules and inmate rights which all MDC inmates were required to read and sign. The inmate handbook outlined the grievance procedure. Baily County Sheriff Richard Wills, who was responsible for the overall management of BCJ, outlined the grievance procedure in his affidavit.

> The BCJ grievance process was also available to MDC inmates, requiring that a complainant request a grievance form, fill it out and give it to any BCJ staff member. Once a grievance was received, it was investigated within thirty days although typically, the investigative process is shorter in duration. The BCJ grievance policy requires a written response to each grievance, which is provided to the complainant once the investigation is complete. The written response informed the inmates that the issue may be appealed and a final decision rests with the Sheriff. Per BCJ policy, failure to appeal a grievance decision resolves the underlying grievance and no further action is warranted.

*Martinez* report, Exh. D.

  14. Plaintiff filed eleven grievances while incarcerated at the BCJ. *Martinez* report, Exh. H. These grievances were submitted on two dates, October 20 and November 11, 2007. BCJ staff members responded in writing to each of Plaintiff's grievances within three days of receipt, rejecting Plaintiff's grievances based on BCJ policies, which are based on Texas Statutory Standards. *Id.* Plaintiff never filed an appeal of any of these grievances.

  15. The undisputed evidence before the Court is that BCJ had an grievance procedure that included an appeal to the Sheriff. As Plaintiff did not appeal his grievances to the Sheriff,

Plaintiff did not exhaust his administrative remedies as to any of his claims. *Ross v. McCort*, 292 Fed. Appx. 714, 717 (10th Cir. 2008) (The Court noted that Plaintiff did not appeal his grievance and thus failed to exhaust his administrative remedies under PLRA). Thus, the Court finds that all of Plaintiff's claims in his Complaint and Amended Complaint should be dismissed for failure to exhaust his administrative remedies.

    Conclusion.

16.    Pursuant to the mandates of the PLRA Plaintiff is required to exhaust all administrative remedies provided by the correctional institution prior to filing a lawsuit. Plaintiff's failure to comply mandates dismissal of all claims which have not been first brought to the correctional facility. Although Plaintiff claims he filed several grievances at MDC, MDC records demonstrate that there is no record of the Plaintiff having utilized the grievance process. Furthermore, Plaintiff was advised and given the opportunity to resubmit the grievances he alleged he had already submitted and he declined to do so. As to the grievances he filed at BCJ, Plaintiff failed to exhaust all administrative remedies when he did not appeal the disposition of his grievances to the Sheriff.

## **RECOMMENDED DISPOSITION**

I recommend that Plaintiff's Civil Rights Complaint filed October 12, 2007, and Plaintiff's Amended Civil Rights Complaint filed November 23, 2007, be dismissed without prejudice.

Timely objections to the foregoing may be made pursuant to 28 U.S.C.§ 636(b)(1)(C). Within ten days after a party is served with a copy of these Proposed Findings and Recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such Proposed Findings and Recommended Disposition with the Clerk of the United States District Court.

A party must file any objections within the 10 (ten) day period allowed if that party wants to have appellate review of the Proposed Findings and Recommended Disposition. If no objections are filed, no appellate review will be allowed.

 

                                          **ALAN C. TORGERSON**
                                          **UNITED STATES MAGISTRATE JUDGE**